# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW McREYNOLDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:15CV157 NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Matthew McReynolds (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 13). Defendant has filed a brief in support of the Answer. (Doc. 18). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 8).

# I.
# PROCEDURAL HISTORY

On December 5, 2011, Plaintiff filed his application for DIB, alleging a disability onset date of March 20, 2010.[1] (Tr. 11, 133-34). Plaintiff's application was denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 84, 91-92). After a hearing, by decision dated September 18, 2013, the ALJ found Plaintiff not disabled. (Tr. 11-21). On November 17, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant

---

[1] Plaintiff's previous application for benefits was denied by an ALJ, by decision dated March 19, 2010. (Tr. 54-62). The Appeals Counsel denied review on November 8, 2010. (Tr. 66-70).

must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC).  See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th

Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d

4

65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See

Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified, at the hearing, that he had a heart attack; that he had oxygen deprivation to his brain; that statements from Dennis Glasock, D.O., that Plaintiff had done well without lightheadedness or dizziness were incorrect; that Plaintiff had lightheadedness and dizziness, as well as trouble with memory, walking, stability, sleeping, and depression; that, in the several years prior to the hearing, he had not received any care from a psychiatrist or licensed psychologist;

and that he had lower back pain, shocks going down his arm from a pinched nerve in his back, and leg numbness from the pinched nerve. (Tr. 32-34).

The ALJ found that Plaintiff last met the insured status requirements on December 31, 2011; that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of March 20, 2010, through the date he was last insured, December 31, 2011; that Plaintiff had the severe impairments of "residuals of an internal cardiac defibrillator (re)placement following a fibrillation related cardiac arrest and degenerative disc disease of the lumbar spine"; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 13, 15). The ALJ further found that Plaintiff had the following RFC: Plaintiff could perform light work except that he could never climb ropes, ladders or scaffolds, but he could occasionally climb stairs and ramps, stoop, kneel, and crouch. Further, Plaintiff must avoid all exposure to unprotected heights, and avoid concentrated exposure to extreme heat, extreme cold, vibration, and moving and dangerous machinery. The ALJ concluded that Plaintiff could perform his past relevant work as a retail sales clerk as it is generally performed, and that, therefore, Plaintiff was not disabled within the meaning of the Act. (Tr. 16, 20).

Plaintiff contends that the ALJ's decision is not based on substantial evidence for the following reasons: The ALJ did not include sufficient limitations

in Plaintiff's RFC regarding Plaintiff's physical and mental limitations; the ALJ gave improper weight to Dr. Glasock's opinion regarding Plaintiff's ability to lift and Plaintiff's ability to sustain full-time work; the ALJ failed to find that Plaintiff had a severe mental impairment; and the ALJ gave improper weight to the opinion of David Peaco, Ph.D. For the following reasons, the court finds that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law, and that Plaintiff's arguments to the contrary are without merit.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v.

Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the ALJ's determination that Plaintiff was not entirely credible is based on substantial evidence. (Tr. 15).

First, the ALJ considered that, during the relevant period of March 20, 2010, Plaintiff's alleged onset date, through December 31, 2011, the date he was last insured, Plaintiff had very little medical treatment. See Dipple v. Astrue, 601 F.3d 833, 834 (8th Cir. 2010) (claimant is required to prove that he was disabled prior to expiration of his insured status; the relevant period is from the alleged onset date until date last insured). While evidence of a "claimant's condition subsequent to the expiration of his insured status may bear upon the severity of the claimant's condition before the expiration of his [] insured status," Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984), a claimant must nonetheless establish that his disability existed prior to the expiration of his insured status, Martonik v. Heckler, 773 F.2d 236, 237 (8th Cir. 1985). Further, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care"); 20 C.F.R. §

404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating her symptoms).

In regard to the frequency of his treatment, Plaintiff had *only one appointment in 2010*, after his alleged onset date, and, at that appointment, on May 10, 2010, Dr. Glasock reported that Plaintiff had done well with his defibrillator, and that Plaintiff denied having further chest pain since he had been started on medication a year earlier. (Tr. 514). After being seen on May 10, 2010, Plaintiff was not seen again until January 7, 2011, when he was seen for right back and rib pain since falling on the ice on December 24, 2010. (Tr. 444). Plaintiff saw Daniel Kramer, M.D., on May 20, 2011, seeking a referral to a mental health provider; he had no other problems on that date. (Tr. 444). On May 24, 2011, Dr. Glasock reported that, since Plaintiff was last seen, he had no shocks from his defibrillator and had done well. Also, Plaintiff denied chest pain and shortness of breath. Notably, Dr. Glasock reported, on this date, that Plaintiff was to return in six months. (Tr. 513).

On December 12, 2011, Plaintiff was seen for complaints of low back pain *after he had engaged in heavy lifting*. (Tr. 443). Further, in April 2013, Dr. Glasock reported that Plaintiff was not to return for follow-up for one year. (Tr. 618). See Milam v. Colvin, 2015 WL 4491742, at *6 (8th Cir. Jul. 24, 2015) (claimant's not seeking medical treatment for her alleged pain for long periods of

time detracted from her credibility) (citing Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (holding that the claimant's "failure to seek medical assistance for her alleged . . . impairments contradict[ed] her subjective complaints of disabling conditions and support[ed] the ALJ's decision to deny benefits").

Second, as considered by the ALJ Plaintiff made inconsistent statements. (Tr. 17). In this regard, when asked by the ALJ how far he went in school, Plaintiff responded that he had a General Education Diploma (GED). After the ALJ noted that the record reflected that Plaintiff had three years of college, Plaintiff responded, "[y]eah, a long time ago." (Tr. 28). When asked by the VE if he had any training while in college on computer work, Plaintiff responded that he took Word Perfect and Excel classes and "basic computer which is just [h]ow to put a keyboard in [a] PC." (Tr. 44). The ALJ noted that this testimony is disproportionate to the skills Plaintiff necessarily possessed as the Information Technologies Director for a county government and as an internet sales manager for a car dealership. (Tr. 17, 29-31). In this regard, Plaintiff testified that, as an internet sales manager, he sold vehicles online and developed a plan and a web site for doing so. (Tr. 29). Plaintiff also testified that he worked as a low-voltage technician for computers, which job required that he make connections with low-voltage wires. (Tr. 30).

Moreover, despite his having gone to college and testifying that he had a GED, Plaintiff told Dr. Peaco that he only had a tenth grade education and no GED. (Tr. 622). Plaintiff also told Dr. Peaco that he was unemployed since 2003, but he testified at the hearing that he was self-employed from 2002 to 2004. Additionally, Plaintiff told Dr. Peaco that he did not drive despite his mother's reporting that he drove and his testifying that he did so. (Tr. 31, 41, 211, 622-23). Further, the ALJ considered that Plaintiff lacked credibility because he testified that Dr. Glasock incorrectly reported that he denied lightheadedness or dizziness. (Tr. 17, 33). Although Plaintiff testified he used a cane when he saw his doctors, the record is void of any mention of Plaintiff's use of a cane. When asked by the ALJ why his medical records made no reference to his use of a cane in the last couple of years or of his having difficulty with ambulation or balance, Plaintiff testified that he had "no clue," and that he had seen his both general physician and his cardiologist "using a cane." (Tr. 33).

Additionally, Plaintiff told a vocational counselor, on February 1, 2007, that his defibrillator gave "him a jolt" when he had "a bad day." (Tr. 542). The record, however, reflects that Plaintiff was shocked by his defibrillator on only two occasions. (Tr. 267, 408, 513, 542). Finally, although Plaintiff testified that he went to vocational rehabilitation twice, once in 2007 and once in the 1980s, the record reflects that he also attended vocational rehabilitation in 2009. (Tr. 17, 40,

528-29).   Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that subjective complaints may be discounted if the evidence as a whole is inconsistent with a claimant's testimony); Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility).

Third, when Plaintiff was asked if he was interested in a part-time job, on July 31, 2009, he responded that it "would not be worth it to get a job if he ha[d] to pay more for rent" and that he wanted to wait until he received Social Security disability benefits before he went to work.  (Tr. 529).  See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (finding financial motivation in seeking disability benefits is a proper consideration for an ALJ).

Fourth, the ALJ considered that, in his hearing testimony and written materials and at consultative examinations, Plaintiff appeared to make himself seem more limited than he really was.  (Tr. 20).  For example, the ALJ observed that, at the hearing, Plaintiff responded quickly and accurately to every question until his representative questioned him about "mental blocks."  (Tr. 20, 37-38).  As considered by the ALJ, at a prior hearing, conducted in January 2012, Plaintiff testified that he raked leaves, cooked meals, and did laundry and car maintenance,[2]

_____

[2]   Actually, the previous ALJ reported that Plaintiff stated, in a Function Report – Adult, that he could do laundry, garden, rake leaves, vacuum, and perform car maintenance; that he did the shopping and prepared meals; and that he drove once

but, at the June 2013 hearing, Plaintiff testified that he did not cook; that he became fatigued walking up twelve steps; that concentration "tend[ed] to [] wear [him] out"; that he had trouble concentrating while watching television; and that, if he was "somewhere, [he] might recognize the place," or he might not. (Tr. 20, 33, 35-36, 40, 60).

Fifth, the ALJ considered that a field office employee noted that Plaintiff did not have any difficulty understanding or communicating during his interview. (Tr. 172). Cf. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"). Notably, the observation of the field office employee was only one factor considered by the ALJ when considering the credibility of Plaintiff's complaints. See Polaski, 739 at 1332 ("The adjudicator is not free to accept or reject the claimant's subjective

---

a week despite being advised by his doctor not to drive. (Tr. 60). To the extent the ALJ in the matter under consideration may have erred when describing Plaintiff's testimony at the prior hearing, there is no indication that any such error affected the outcome of this matter. Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently had he read the hand-written notation to say 'walk' rather than 'work' and any error by the ALJ was therefore harmless.").

complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.").

Sixth, the ALJ considered Plaintiff's daily activities. Indeed, in a Function Report – Adult – Third Party, completed in 2012, Plaintiff's mother reported that Plaintiff prepared his own meals on a daily basis; that he did laundry and light housework and mowed the yard, without needing help or encouragement; that Plaintiff watched television, played video games, and read on a daily basis; that he spent time with others; that he attended family dinners on a weekly basis; and that, when Plaintiff went places, he did not need someone to accompany him. (Tr. 218-20).

Also, Plaintiff reported, in a Function Report – Adult, dated January 10, 2012, that he made coffee, watched television, played games on a computer, watched the news, and made dinner; that he used a riding lawnmower, did laundry and dishes, and picked up letters from the mail without assistance; and that he shopped in stores for groceries and cleaning supplies. (Tr. 194-97). Further, Plaintiff told Dr. Peaco that he spent his days playing video games and watching television. Indeed, Dr. Peaco reported that Plaintiff was independent in all activities of daily living. (Tr. 623).

While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, a claimant's daily activities can

nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cook[ing], tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"). See also Roberson v. Astrue, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for groceries, and visited friends). Moreover, to the extent Plaintiff urges the court to reweigh the evidence regarding Plaintiff's daily activities and draw its own conclusion in this regard, it is not the function of the court to do so. See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted).

Sixth, the court notes that Dr. Peaco reported that Plaintiff's "functioning level would improve" if he made a change in his "alcohol dependence." Conditions which can be controlled by treatment are not disabling. See Renstrom

v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Seventh, when Plaintiff was seen for back pain, a nurse practitioner recommended rest, heat, analgesics, and muscle relaxants, and gave Plaintiff instructions on proper lifting techniques. (Tr. 443, 465). See Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012) (conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain); Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992) (the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain).

Eighth, health care professionals opined that Plaintiff was capable of working and that he was capable of engaging in substantial activity. Cf. Atkinson v. Bowen, 864 F.2d 67, 70-71 (8th Cir. 1988) (finding claimant was disabled until he received vocational training or refused to participate in available training program). In particular, Karen Shatto, M.A., a Vocational Specialist with the Center for Head Injury Services, opined that Plaintiff could work as a computer support specialist, electronic sales person, or alarm installation technician. (Tr. 601). Also, Dr. Glasock suggested Plaintiff attend college classes, stating that he

should remain active and that he appeared to function at a reasonable level. (Tr. 564).

Ninth, in addition to Plaintiff's mother's description of Plaintiff's daily activities, in the Function Report – Adult - Third Party, the ALJ also considered Plaintiff's mother's description of Plaintiff's ability to engage in work-related activities, in the Function Report – Adult – Third Party. In this regard, Plaintiff's mother never mentioned Plaintiff used a cane. (Tr. 19). Plaintiff's mother also reported that Plaintiff did not need to be reminded to go places; that Plaintiff did not have any problems getting along with family, friends, neighbors, or others; and that Plaintiff's alleged disabling conditions did not affect his ability to sit, squat, bend, talk, stand, hear, use his hands, reach, see, or walk. (Tr. 209-13).

As considered by the ALJ, the testimony of Plaintiff's mother corroborated Plaintiff's testimony, in part, and contradicted it, in part. To the extent Plaintiff suggests that the ALJ failed to sufficiently consider his mother's report, the Eighth Circuit Court of Appeals has frequently criticized the failure of an ALJ to consider subjective testimony of a claimant's family. The ALJ in this matter, however, did consider the report completed by Plaintiff's mother. In any case, no case directs that reversal is appropriate where an ALJ fails to specifically consider third party testimony when the ALJ has discredited the testimony of the claimant. See e.g., Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988); Smith v. Heckler, 735 F.2d

312, 317 (8th Cir. 1984). Moreover, the ALJ may discount corroborating testimony on the same basis used to discredit a claimant's testimony. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 2006). Thus, where the same evidence that the ALJ relied upon when discrediting the testimony of Plaintiff would have been the same evidence which would have supported discrediting the testimony of Plaintiff's mother, the ALJ's failure to address or discount the report of Plaintiff's mother is "inconsequential." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that an ALJ's decision need not be reversed where he failed to consider testimony which would not have had an effect on the outcome of the case).

Ninth, to the extent Plaintiff argues that the ALJ failed to give proper weight to test results from the Center for Head Injury Services (Doc. 13 at 12), the court notes that test results showed that Plaintiff was "proficient in all areas of reading" and "with addition and subtraction of whole numbers"; that he demonstrated difficulties with multiplication, division, fractions, and percentages; that Plaintiff was in the ninety-fifth percentile in both vocabulary and reading comprehension; and that, on the Woodcock-Johnson III Test of Cognitive Ability, Plaintiff had an average performance compared to others at "his grade level in two-year colleges." (Tr. 612-14).

Notably, the ALJ did consider that the Center for Head Injury Services tested Plaintiff "and found credit hours to prepare him for [a] certification exam"; that it conducted a "comprehensive vocational evaluation" of Plaintiff; that the testing demonstrated that Plaintiff had "strengths in reading comprehension, vocabulary, mathematical problem solving skills, fluid reasoning, and computer knowledge"; and that based on this assessment, Plaintiff was sent to St. Charles Community College. After considering these factors, the ALJ concluded that "there [was] no credible, substantive, objective medical evidence that [Plaintiff] [was] limited more than mildly." (Tr. 15). <u>See</u> Social Security Ruling (SSR) 06-7p(4), 1996 WL 374186, at *1 (July 2, 1996) ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence," although disability determination "cannot be made solely on the basis of objective medical evidence."). As such, the court finds that the ALJ gave proper weight to test results from the Center for Head Injury Services; that these test results were not inconsistent with the ALJ's credibility determination or with his ultimate determination of Plaintiff's RFC; and that Plaintiff's arguments to the contrary are without merit.

**B.    The Severity of Plaintiff's Mental Impairments:**

The court first notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. §

404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

The court has set forth above, in regard to Plaintiff's credibility, his activities of daily living, as considered by the ALJ. Further, the ALJ found that Plaintiff had only mild limitations in his activities of daily living, as he was independent in most areas, as confirmed by the above discussed reports from Plaintiff's mother and Dr. Peaco. The court finds that the ALJ's determination that Plaintiff had only mild limitations in his activities of daily living is based on substantial evidence.

In regard to Plaintiff's limitations in the area of social functioning, the ALJ found that Plaintiff had mild limitations. (Tr. 14). In this regard, the ALJ considered that Plaintiff played video games and occasionally visited his brother to play video games. (Tr. 14, 203, 623). Additionally, Plaintiff's mother reported

that Plaintiff spent time visiting with others and attending family dinners, and that Plaintiff had no difficulty getting along with others. (Tr. 220). Further, Dr. Peaco reported that Plaintiff had only moderate limitations in regard to interacting with the public, supervisors, and co-workers. (Tr. 620). The court finds, therefore, that the ALJ's determination that Plaintiff had only mild limitations in the area of social functioning is based on substantial evidence.

As for the area of concentration, persistence, or pace, the ALJ found that Plaintiff had a mild limitation. (Tr. 15). In particular, the ALJ considered that the Center for Head Injury Services found that Plaintiff could complete certification courses for information technology positions. The ALJ also considered that it was reported that Plaintiff had strengths in reading comprehension, vocabulary, mathematical problem solving skills, fluid reasoning, and computer knowledge, and that Plaintiff testified that his short-term memory was improving. Indeed, the record reflects that Plaintiff had been sent to take college courses. (Tr. 15, 534, 536). Further, it was recommended that Plaintiff receive Vocational Rehabilitation, and it was reported that Plaintiff acknowledged that he would be able to work as a network technician even though he did not believe he could work at the level he previously worked in the computer field. (Tr. 534).

Also, in regard to Plaintiff's allegations of problems with his memory, Dr. Glasock reported, in July 2007, that Plaintiff could "function at a reasonable level,"

despite having some degree of mental impairment. (Tr. 564). Also, Dr. Peaco reported that Plaintiff had only a mild limitation in regard to understanding and remembering simple instructions, and that he had only moderate limitations in regard to carrying out simple instructions, making judgments on simple work-related decisions, and understanding and remembering "complex instructions." (Tr. 519). The court finds, therefore, that the ALJ's determination that Plaintiff had only a mild limitation in the area of concentration, persistence, or pace is based on substantial evidence.

As for episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation which had been of an extended duration; that Plaintiff never had any mental health treatment on an inpatient or outpatient basis, see Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care"); 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating her symptoms); and that, until his representative asked for memory testing, Plaintiff never complained of any need for mental health intervention. (Tr. 15). As such, the court finds that the ALJ's determination in regard to episodes of decompensation is based on substantial evidence.

Consistent with the Regulations, because the ALJ found that Plaintiff's medically determinable impairments caused no more than mild limitations and that Plaintiff experienced no episodes of decompensation which had been of an extended duration, the ALJ found that Plaintiff's alleged mental impairment was not severe. 20 C.F.R. §§ 404.1520a(c)(4) and 404.1520a(d)(1). As such, the court finds that the ALJ's determination that Plaintiff's mental impairment was not severe is based on substantial evidence and is consistent with the Regulations and case law.

## C.    Dr. Peaco's Opinion:

Dr. Peaco conducted a Psychological Evaluation of Plaintiff, on June 25, 2013, pursuant to which he reported the following: the pace and tone of Plaintiff's speech were normal; his flow of thinking was normal; his mood was irritable; his orientation was intact; his delayed memory appeared to be below average; his working memory appeared to be about average; and his general information and vocabulary were below average. Dr. Peaco concluded that Plaintiff was able to understand instructions but might have some difficulty remembering instructions; that his persistence in completing tasks was profoundly impaired; that his concentration and social functioning were markedly impaired; and that his capacity to adjust to and cope with the world around him was moderately impaired due to "some apparent memory impairment, mild depression, mild anxiety, and excessive

alcohol usage." He also concluded that Plaintiff could manage funds correctly and in his own best interest. Dr. Peaco further found that Plaintiff had a Global Assessment of Functioning (GAF) of 60.[3] (Tr. 622-24).

On June 27, 2013, Dr. Peaco also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), in which Dr. Peaco opined that Plaintiff had mild limitations in regard to understanding and remembering simple instructions. Dr. Peaco also found that Plaintiff had moderate limitations in regard to carrying out simple instructions, making judgments on simple work-related decisions, understanding and remembering complex instructions, interacting

---

[3] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

appropriately with the public, supervisors, and co-workers, and responding appropriately to usual work situations and to changes in the routine work setting. He further found that Plaintiff had marked limitations in regard to making judgments on complex work-related decisions and carrying out complex instructions. Finally, Dr. Peaco opined that Plaintiff's alcohol dependence contributed to his limitations and that Plaintiff's functioning level would improve if he made changes in this regard. (Tr. 619-20).

The ALJ stated that "[b]ecause of the many inconsistencies in [Plaintiff's] reports to Dr. Peaco, the functional limitations that [Dr. Peaco] reported [were] not given significant weight." (Tr. 19). Plaintiff contends that the ALJ gave improper weight to Dr. Peaco's opinion upon determining Plaintiff's RFC and that Dr. Peaco verified the mental limitations which Plaintiff alleged he had. (Doc. 13 at 12-13). For the following reasons, the court finds that the ALJ gave proper weight to Dr. Peaco's opinion and that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

First, as discussed, in part, in regard to Plaintiff's credibility, Plaintiff incorrectly told Dr. Peaco that he only had a tenth grade education, attended special education classes, was unemployed since 2003, and did not drive a car. (Tr. 622-23). As such, Dr. Peaco's opinion was based on inaccurate information.

Second, Dr. Peaco's conclusions were based, at least in part, on Plaintiff's self-reporting, including Plaintiff's reporting that he had "severe problems with forgetfulness and delayed memory functioning since his heart attack"; that he was "very inactive" during the day; that he had a "very limited social life; that he did not do any chores during the day; that his "persistence in completing tasks [was] profoundly impaired"; and that "he was unable to continue working due to his physical problems and poor memory." (Tr. 623). A physician's opinion is not entitled to controlling weight when it is based, in part, on a claimant's subjective complaint. See Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) ("The [commissioner] was entitled to give less weight to [the treating doctor's] opinion, because it was based largely on [the claimant's] subjective complaints rather than on objective medical evidence.") (quoting Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007)); Renstrom v. Astrue, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor, where doctor's opinion was "largely based on [claimant's] subjective complaints").

Third, as discussed above, Dr. Peaco reported that Plaintiff's mental health symptoms would improve if he eliminated his alcohol dependence. Significantly, Dr. Peaco reported that, at the time of his evaluation of Plaintiff, Plaintiff was consuming "about 8 to 10 drinks per day," and that the "only alcohol treatment programs in which [Plaintiff] ha[d] participated were as conditions of probation

following DWI offenses." (Tr. 622). See <u>Renstrom</u>, 680 F.3d at 1066; <u>Davidson</u>, 578 F.3d at 846.

Fourth, Dr. Peaco reported that Plaintiff had a GAF of 60 which represents only a "moderate" limitation in overall functioning. Although "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' . . . GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." <u>Halverson v. Astrue</u>, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing <u>Howard v. Comm'r of Soc. Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy). In conclusion, the court finds that the weight the ALJ gave to Dr. Peaco's opinion by the ALJ is based on substantial evidence and is consistent with the Regulations and case law.

**D.    Dr. Glasock's Opinion:**

In 2007, Dr. Glasock completed a Work Capacity Form, on which he opined that Plaintiff could *occasionally lift 20 pounds* and *frequently lift no weight*; that Plaintiff could stand and/or walk 6 hours in an 8-hour workday; that he could occasionally climb, balance, stoop, kneel, crouch, crawl, squat, twist, and bend; and that he had unlimited ability to handle (gross manipulation), handle (fine

manipulation), feel, grasp, and grip.  Dr. Glasock also reported that Plaintiff should avoid even moderate exposure to extreme temperatures and working with machinery, and avoid all exposure to chemicals, vibration, and heights.  (Tr. 357-58).

On November 6, 2008, Dr. Glasock completed a Physician's Assessment for Social Security Disability Claim, in which he reported that Plaintiff had idiopathic ventricular fibrillation with prior cardiac arrest, anoxic encephalopathy, and memory problems; that he had a defibrillator implant in 2006; that he had continued episodes of ventricular fibrillation with device shocks in 2006 and 2007; that Plaintiff had difficulty remembering medication and appointments which was consistent with anoxic encephalopathy; that Plaintiff's treatment included a defibrillator and medication; that Plaintiff had "some communication impairment due to memory deficit"; and that Plaintiff was not capable of sedentary work due to his "attention and memory deficit."  Also, Dr. Glasock opined, based on the combined effects of his medical impairments, including a memory and attention deficit, that Plaintiff was not capable of maintaining sustained employment at the sedentary level.  (Tr. 408).

On November 20, 2008, Dr. Glasock signed notes, prepared by his nurse practitioner, indicating that *Plaintiff denied dizziness or shocks from his device*; that Plaintiff's device was operating properly; and that Plaintiff had *no ventricular*

*episodes* since his last examination. Plaintiff was asked to return in one year. (Tr. 410). On January 27, 2009, Dr. Glasock reported, in a letter, that Plaintiff had done well until his recent reports of chest pain, but noted that *medications helped*. (Tr. 409). A February 2009 cardiac catheterization showed mild lesions in the left anterior descending artery, but *normal blood flow*. (Tr. 405, 420). On December 11, 2009, Dr. Glasock reported that it was still his opinion that the combination of Plaintiff's symptoms would prevent him from engaging in sustained full-time sedentary employment. (Tr. 407).

On May 10, 2010, Dr. Glasock reported that Plaintiff had *done well* with his defibrillator; that, since Plaintiff had been placed on medication, he *denied further chest pain*; and that, on examination, *Plaintiff's heart was* "*regular*," and he had no edema in his extremities. (Tr. 514). On January 4, 2012, Dr. Glasock reported that Plaintiff received a defibrillator, in February 2006, and that he had been last shocked in 2007, "which was appropriate and converted his rhythm." On examination, Plaintiff was "*in no obvious distress*," his heart was "regular," and he had no edema in his extremities. (Tr. 510).

On March 15, 2012, Dr. Glasock reported that Plaintiff had a defibrillator implanted in February 2006; that at that time Plaintiff had anoxic brain injury and was unable to work; that Plaintiff's device was electively replaced in March 2, 2012; and that, *since Plaintiff's device was replaced on March 2, 2012, he had*

done well without *lightheadedness, dizziness*, *or shocks* from the device. On examination, Plaintiff's heart was "regular," and he had no edema in his extremities. Dr. Glasock reported that Plaintiff's device was functioning appropriately, and that Plaintiff *would be seen in one year* unless he had further difficulty. (Tr. 617).

On April 23, 2013, Dr. Glasock reported that Plaintiff was in "*no obvious distress*"; that he had *no shocks* from his defibrillator since he was last seen; that Plaintiff *denied dizziness*; that Plaintiff's respiration was non labored; that his heart was without murmur, rub, or gallop; that Plaintiff had no clubbing, cyanosis, or edema in his extremities; that Plaintiff was *alert and oriented*; and that Plaintiff had *appropriate mood and affect* and no focal motor or sensory deficits. Plaintiff was to continue his medical regiment and was to be seen for *follow-up in one year*. (Tr. 618).

The ALJ considered Dr. Glasock's records and reports, but declined to give Dr. Glasock's opinion that Plaintiff could not perform all work activity controlling weight. (Tr. 19). Indeed, despite Dr. Glasock's opining that Plaintiff could lift 20 pounds occasionally and no weight frequently, the ALJ found that Plaintiff could perform light work, which involves lifting and carrying 20 pounds occasionally and 10 pounds frequently. (Tr. 16). Plaintiff argues that the ALJ gave improper weight to Dr. Glasock's opinion upon determining Plaintiff's RFC, arguing

specifically that the ALJ failed to explain why he discounted Dr. Glasock's opinion regarding Plaintiff's ability to lift frequently. (Doc. 13 at 8-11). For the following reasons, the court finds that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

First, the ALJ acknowledged that, as Plaintiff's treating doctor, Dr. Glasock's opinion was entitled to controlling weight unless it was not supported by the record or unless there was substantial contradictory evidence. (Tr. 19). See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'") (quoting 20 C.F.R. § 404.1527(d)(2) (2000)).

Second, the court notes that Dr. Glasock opined that Plaintiff could lift no weight frequently in 2007 and 2008, which was prior to Plaintiff's alleged onset date for purposes of Plaintiff's current application for benefits.

Third, as stated above, the relevant period commenced on Plaintiff's alleged onset date of March 20, 2010, and ended on December 31, 2011. On May 10, 2010, in the first medical record after Plaintiff's alleged onset date, Dr. Glasock reported that Plaintiff was doing well, with no chest pain. (Tr. 514). One year later, on May 24, 2011, pursuant to Plaintiff's yearly visit with Dr. Glasock, Dr.

Glasock reported that Plaintiff was doing well and had not been shocked by his device since 2007. (Tr. 513). Also, during the relevant period, as discussed above, Dr. Glasock reported that Plaintiff denied chest pain, had a regular heart rate, had no edema, was in no distress, had done better after his defibrillator was replaced in March 2012, and had no motor or sensory deficits. Cf. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).

Fourth, consistent with Dr. Glasock's opinion, the ALJ found that Plaintiff should avoid all exposure to heights and moderate exposure to temperature extremes and machinery. Moreover, the ALJ limited Plaintiff to light work, which was consistent with Dr. Glasock's opinion that Plaintiff could lift and carry twenty pounds occasionally. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

Fifth, to the extent Dr. Glasock opined that Plaintiff could not frequently lift any weight, he did so by checking a box on a form.  See Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011) (holding that checkmarks on a Medical Source Statement are "conclusory opinions" which can be discounted if contradicted by other objective medical evidence); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) ("'The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value.' . . .  Indeed, '[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.'") (quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) and Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996)).

Sixth, as considered by the ALJ, Dr. Glasock's opinion that Plaintiff's problems were due to a memory impairment was based, at least in part, on Plaintiff's own reports of forgetting appointments and medications, and Dr. Glasock noted that he would defer Plaintiff's complaints of a memory impairment to a neurologist.  (Tr. 408).  See Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) ("The [commissioner] was entitled to give less weight to [the treating doctor's] opinion, because it was based largely on [the claimant's] subjective complaints rather than on objective medical evidence."); Renstrom v. Astrue, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling

weight to opinion of treating doctor, where doctor's opinion was "largely based on [claimant's] subjective complaints). Nonetheless, as considered by the ALJ, the record does not reflect that Plaintiff was sent for a neurological work-up for his reported memory deficit, and the only objective testing was performed by the Center for Head Injury Services. Pursuant to this testing, it was concluded that Plaintiff could take courses for certification in several occupations. (Tr. 606-16). Likewise, Dr. Glasock even opined, on July 19, 2007, that there was "no contraindication to [Plaintiff's] attending any college educational classes," and that Plaintiff should stay active. (Tr. 564).

Seventh, the ALJ considered objective test results when determining the weight to be given Dr. Glasock's opinion regarding Plaintiff's ability to lift. In particular, a January 20, 2009 nuclear exercise stress test showed that Plaintiff had good exercise tolerance and that he had achieved at least eighty-five percent of the maximum predicated heart rate. (Tr. 402, 422-23). When Plaintiff had an x-ray due to back and rib pain in January 2011, the x-rays revealed no fracture. (Tr. 457). Also, a February 8, 2012 echocardiogram showed normal left ventricular ejection fraction with a moderate increase in wall thickness and mild to moderate dilation in the right ventricle and atrium. (Tr. 488, 508-509).

Eighth, to the extent Dr. Glasock opined that Plaintiff could not frequently lift ten pounds, Plaintiff fails to point to any evidence of record to support such a

limitation. Notably, when Plaintiff complained of back pain on December 12, 2011, he was given instructions on how to properly lift and told to avoid heavy lifting. It was noted on this date, however, that Plaintiff complained of having the back pain *only for one day* and that the "precipitating factor[]" was "*recent heavy lifting*." (Tr. 443, 465).

Tenth, when Daniel Kramer, M.D., referred Plaintiff to a mental health provider in May 2011, he noted that Plaintiff had no other problems and noted no abnormalities in regard to Plaintiff's neck and extremities. (Tr. 465-66).


**D.    Plaintiff's RFC:**

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

As stated above, the ALJ found that Plaintiff had the following RFC: Plaintiff could perform light work except that he could never climb ropes, ladders or scaffolds, but he could occasionally climb stairs and ramps, stoop, kneel, and crouch. Further, Plaintiff must avoid all exposure to unprotected heights, and avoid concentrated exposure to extreme heat, extreme cold, vibration, and moving and dangerous machinery. Plaintiff contends that the medical evidence does not support the ALJ's RFC determination. For the following reasons, the court finds Plaintiff's argument without merit and that the ALJ's RFC determination is based on substantial evidence and is consistent with the Regulations and case law.

First, the ALJ accommodated Plaintiff's degenerative disc disease and heart-related issues by limiting the amount of walking and lifting he could do, as well as his exposure to temperature extremes, vibration, and dangerous machinery.

Second, only after considering the medical evidence of record, did the ALJ determine Plaintiff's RFC. Notably, Dr. Glasock's findings, upon examination of Plaintiff, as opposed to his RFC assessments, support the ALJ's RFC determination that Plaintiff could engage in light work with the specified restrictions. As discussed above, after Plaintiff's alleged onset date, Dr. Glasock reported that Plaintiff's heart was regular; that he had not been shocked since 2007, at which time his rhythm was converted; that Plaintiff was in no obvious distress; that, since defibrillator replacement in March 2012, Plaintiff did not have

lightheadedness, dizziness, or shocks from the device; that he was in no obvious distress; that Plaintiff's heart was without murmur, rub, or gallop; that Plaintiff had no extremity edema; and that Plaintiff was alert and oriented.  (Tr. 510, 514, 617-18).  See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) ("'Some medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).").

Third, to the extent Plaintiff argues that the ALJ had no basis upon which to evaluate Plaintiff's mental impairments for purposes of Plaintiff's RFC because he discounted Dr. Peaco's opinion, the ALJ did, in fact, have Dr. Glasock's records and records from the Center for Head Injury Services, as discussed above, as a basis for determining the extent of Plaintiff's alleged mental impairments.

Fourth, to the extent Plaintiff suggests that the ALJ should have obtained a consultative psychological examination of Plaintiff, an ALJ is not required to order a consultative examination where there is no crucial issue in the record which requires development.  Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994) (holding that "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's

decision" and that it is the claimant's burden to prove disability and provide credible evidence regarding his alleged impairment); Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1512(e), 416.912(e). Indeed, the record, in the matter under consideration, was fully developed in regard to all of Plaintiff's alleged impairments.

Fifth, to the extent Plaintiff argues that the ALJ should have included greater limitations in his RFC beyond those which the ALJ assigned to Plaintiff, an ALJ is required only to include those limitations which he finds credible. Cf. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)).

Sixth, to the extent Plaintiff suggests that the ALJ's RFC determination is not based on substantial evidence because it does not mirror the opinion of a single source, in formulating a claimant's RFC, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." Martise, 641 F.3d at 927.

Seventh, the court notes that the ALJ's RFC determination is precise as it addresses Plaintiff's restrictions and the requirements of light work. Further, upon determining Plaintiff's RFC, the ALJ moved analytically from ascertaining the true

extent of Plaintiff's impairments to determining the kind of work he could perform despite his impairments. <u>See</u> <u>Anderson v. Shalala</u>, 51 F.3d. 777, 779 (8th Cir. 1995).

Eighth, the ALJ considered that Plaintiff's contradictory statements, as discussed above in regard to Plaintiff's credibility, were of "no probative value in determining his functional capacity." (Tr. 20). Given that that the court has found the ALJ's credibility determination is based on substantial evidence, the court finds that the ALJ's determination not to give controlling weight to Plaintiff's statements regarding the extent of his functional limitations is based on substantial evidence.

In conclusion, the court finds that the ALJ sufficiently considered all relevant evidence of record, including Plaintiff's testimony, the reports and assessments of Plaintiff's treating and consulting doctors, and the Function Report - Adult - Third Party, completed by Plaintiff's mother, upon determining Plaintiff's RFC, and that substantial evidence in the record, including objective medical evidence, supports the ALJ's RFC determination. Further, the court finds that the ALJ based his opinion on all the credible evidence of record. Only after ascertaining the extent of Plaintiff's impairments did the ALJ determine Plaintiff's RFC. <u>See</u> <u>Anderson v. Shalala</u>, 51 F.3d. 777, 779 (8th Cir. 1995). Indeed, the ALJ first identified Plaintiff's functional limitations and restrictions, and then assessed his work-related abilities on a function-by-function basis. <u>See</u> <u>Masterson</u>, 363 F.3d

at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).  As such, the court

finds that the ALJ's RFC determination is based on substantial evidence and is

consistent with the Regulations and case law.

The ALJ posed a hypothetical to a VE which described a person of

Plaintiff's age and with Plaintiff's RFC, education, and work experience.  (Tr. 44).

To the extent Plaintiff suggests that the ALJ should have included limitations in the

hypothetical beyond those which the ALJ included (Doc. 13 at 10-11), an ALJ

posing a hypothetical to a VE is not required to include all of a claimant's

limitations, but only those which he finds credible.  See Martise, 641 F.3d at 927;

Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not

obligated to include limitations from opinions he properly disregarded.").  A

hypothetical is sufficient if it sets forth the impairments which are accepted as true

and credible by the ALJ.  See Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999)

(holding that the ALJ need not include additional complaints in the hypothetical

not supported by substantial evidence).  The court has found above that the ALJ's

RFC determination is based on substantial evidence.  The court finds, therefore,

that the hypothetical which the ALJ posed to the VE is based on substantial

evidence and is consistent with the Regulations and case law.

In response to the ALJ's hypothetical, the VE testified that the described

individual could perform Plaintiff's past relevant work as a retail sales clerk.  (Tr.

44-45).  As explained by the ALJ, Plaintiff worked as a retail sales clerk in excess of three years, and he earned an amount above the substantial gainful activity level each year he worked as a retail sales clerk.  (Tr. 20, 144, 150-51).  See 20 C.F.R. § 404.1565(a) ("past relevant work" is defined as "work experience [which] . . . was done within the last fifteen years, [which] lasted long enough for [the claimant] . . . to learn to do it, and was substantial gainful activity.").  Based on the VE's testimony that Plaintiff could perform his past relevant work, the ALJ properly found Plaintiff not disabled.  See Bowen v. City of New York, 476 U.S. 467, 471 (1986) (holding that if a claimant is found able to perform the duties of his past relevant work, then he is considered not disabled and, therefore, ineligible for benefits); Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990).  Because the hypothetical which the ALJ posed to the VE, and upon which the ALJ relied, precisely set forth all of Plaintiff's physical and mental impairments, the VE's testimony constitutes substantial evidence supporting the ALJ's decision.  Martise, 641 F.3d at 927 ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial

evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). In conclusion, the court finds that the ALJ's determination that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint (Docs. 1, 13) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 22nd day of January 2016.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE